**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ROBERT MARKHAM,        :            08-cv-2222
           Plaintiff,    :
                       :            Hon. John E. Jones III
        v.            :
                       :
RALPH REISH, Warden, et al.   :
          Defendants.   :

## MEMORANDUM

### June 25, 2010

## I.    INTRODUCTION

Before the Court in this action brought under 42 U.S.C. § 1983 is

Defendants  Ralph Reish ("Reish"), James Smink ("Smink"), Lenny Socko

("Socko"), Randall Treas ("Treas"), and Daryl Miller's ("Miller"), (collectively

"Defendants") Motion for Summary Judgment.  (Doc. 34).  For the reasons

articulated in this Memorandum, the Court will grant the Motion and enter

judgment in favor of Defendants.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the moving party bears the

1

burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## III. BACKGROUND

### A. Procedural History

Plaintiff initiated this action with the filing of a Complaint on December 11, 2008. (Doc. 1). Plaintiff originally named as Defendants Warden Reish and John Doe Defendants 1-5. On March 26, 2009, Plaintiff filed an Amended Complaint that replaced the John Doe Defendants with the above-named Defendants. (Doc. 12). Plaintiff filed a Second Amended Complaint amending a typographical error. (Doc. 16). Plaintiff's Second Amended Complaint alleges claims for violations of his Fourth, Eighth, and Fourteenth Amendment rights and a claim for assault and

battery related to an incident that occurred at Northumberland County Prison on December 13, 2006. Specifically, Plaintiff asserts that he was subjected to excessive force by the Defendants and was denied medical treatment when he was housed in an area apart from other inmates during his three-day incarceration.

On April 9, 2009, Defendants moved to dismiss Plaintiff's Amended Complaint. We granted in part and denied in part the Motion to Dismiss on September 30, 2009, and the following claims remained: (1) assault and battery claims against all Defendants; (2) Fourth, Eighth, and Fourteenth Amendment claims against all Defendants; and (3) an Eighth Amendment Denial of Medical Treatment claim against Defendant Reish[1].

### B.     Factual Background

On December 12, 2006, Plaintiff was sentenced to imprisonment for a period of not less than three (3) days nor more than six (6) months. (Doc. 36 ¶ 1). Plaintiff arrived to Northumberland County Prison at approximately 8:45 a.m. on December 13, 2006. (*Id.* ¶ 2). When Plaintiff voluntarily surrendered himself to

---

[1]Plaintiff withdrew his Eighth Amendment denial of medical treatment claim against Defendant Reish. (Doc. 39 p. 7). Plaintiff asserts that he "concedes that judgment is appropriate against Defendant Reish in connection with any claim for the failure to provide medical treatment." (Doc. 39 p. 8). Based upon the context of the entire brief in opposition and Plaintiff's apparent intent to withdraw the claim, we can safely assume that Plaintiff intended to articulate that judgment is appropriate "for" Defendant Reish or against Plaintiff on that claim. Accordingly, we will enter judgment for Defendant Reish on Plaintiff's denial of medical treatment claim.

commitment, he failed to bring any paperwork or personal identification, although such was required by prison policy and Pennsylvania law at that time. (*Id.* ¶¶ 3-5).

The parties dispute Plaintiff's demeanor when he arrived at the prison. Plaintiff was either yelling and shouting profanities at the main entrance to the prison or, according to Plaintiff "talking loudly". (Doc. 36 ¶ 6; Doc. 38 ¶ 6). Defendants maintain that Plaintiff refused to provide his name to a correctional officer, while Plaintiff asserts that he provided his name. (Doc. 36 ¶ 7; Doc. 38 ¶ 7). Defendants claim that this incident occurred at the prison's "busiest time", around 9:00 a.m., and the parties do not dispute that delivery persons and other individuals and inmates were entering or exiting the premises. (Doc. 36 ¶ 8; Doc. 38 ¶ 8). Reish ordered Smink to ask Plaintiff to leave the premises because Plaintiff did not have his paperwork and because, according to Reish, he was a threat to security. (Doc. 36 ¶ 11). When asked to leave, Plaintiff refused to exit the premises and instead sat down in the foyer/vestibule area. (Doc. 36 ¶¶ 11-12). Plaintiff sat down such that a delivery person had to step over Plaintiff to walk into the prison. (Doc. 36 ¶ 14).

Because Plaintiff refused to leave the vestibule area, at least two of the correctional officer Defendants attempted to pick Plaintiff up off of the floor and escort him out of the prison. (Doc. 36 ¶ 18). The parties dispute which officers

5

did so.  In response, Plaintiff grabbed the ankle of Defendant Socko to resist their efforts to remove him from the building, (Doc. 36 ¶ 19), but no Defendant kicked or punched the Plaintiff while attempting to carry him out of the prison (Doc. 36 ¶ 20).  Plaintiff was, eventually, carried onto the street.  (Doc. 36 ¶¶ 21-23; Doc. 38 ¶¶ 21-23).

After Plaintiff was released from prison on December 15, 2006, he was picked up by his then girlfriend, June Saxon (nee Headly) and went to Evangelical Community Hospital for an examination.  (Doc. 36 ¶ 35).

Plaintiff denies several of the Defendants' asserted facts.  First, Plaintiff denies that he was shouting profanities in the vestibule area, but does apparently admit that he was yelling.  (Doc. 38 ¶ 6).  Further, Plaintiff asserts that he did not refuse to provide his name to a correctional officer when asked.  (*Id.* ¶ 7).  Plaintiff also denies that the traffic in and out of the prison was busy at the time, and although he admits that he did not have his commitment paperwork, he denies that his presence was a threat to the security at the prison.  (*Id.* ¶¶ 8-9, 11).  Plaintiff does admit that a delivery person had to step over him while he sat in the vestibule area, but denies that he was blocking the doors because, as he claims, he had his legs crossed.  (*Id.* ¶¶ 13-14).  With respect to Defendants' assertions that Plaintiff was intoxicated, Plaintiff does not directly deny that he was in fact intoxicated but

rather denies that he had a blood alcohol content of .08 two hours after the incident because there is no documentation of a Breathalyzer test being administered. (*Id.* ¶ 15). Plaintiff further asserts that there was merely a "mild odor" of alcohol emanating from his person rather than a "strong odor." (*Id.* ¶ 16). Further, although Plaintiff admits that he resisted the efforts of the officers to remove him from the building, he asserts that his resistance was because he was attempting to be prompt. (*Id.* ¶ 19). Plaintiff also disputes who actually carried him out of the building and where exactly he was placed when they did so. (*Id.* ¶¶ 18, 22-23). Regarding his injuries, Plaintiff does not deny that the medical examination revealed no apparent injury to his shoulder or head, but rather splits hairs over whether his injuries should be characterized as "bruises" or "contusions," and denies that he threw his right shoulder into a door post on several occasions after the incident so as to injure himself. (*Id.* ¶¶ 36-37).

## C.  Defendants' Arguments in Support of the Motion

In support of the Motion, Defendants proffer several arguments. First, Defendants assert that there is no evidence of record that Defendants Miller and Socko had any personal involvement in the force used to remove Plaintiff from the building. As Defendants highlight, Defendants Smink and Treas carried Plaintiff to the sidewalk and, according to Defendants, the only contact Plaintiff had with

either Socko or Miller was when Plaintiff grabbed Socko's ankle. Therefore, Defendants assert that there is no dispute of material fact with regard Socko and Miller's personal involvement in the altercation, and therefore summary judgment should be granted in Defendants Miller and Socko's favor.

Also regarding Plaintiff's Eight Amendment excessive force claims, Defendants assert that summary judgment must be granted in the remaining Defendants favor as well because there is no evidence on the record to establish the requirement of "wantonness". Because Plaintiff was causing a disruption at the prison and was, therefore, a threat to security, Defendants maintain that the "force was applied [by Defendants] in a good-faith effort to maintain or restore discipline", not to "maliciously and sadistically" cause harm to Plaintiff. (Doc. 35 p. 5 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992))). Defendants detail at length the disruption Plaintiff was causing when he arrived at the prison, intoxicated and without any identification or paperwork, and refused to leave the premises. Defendants assert that any force Defendants used to remove Plaintiff to the sidewalk area was necessary and was *de minimus*: Plaintiff was under the influence of alcohol and apparently belligerent, so Defendants merely picked him up and removed him to the sidewalk. Further, Defendants maintain that, like the force used against Plaintiff, the injuries Plaintiff sustained were, at best, *de*

*minimus*.[2]  Finally, Defendants assert that they are entitled to judgment under Plaintiff's Fourth and Fourteenth Amendment claims because Plaintiff was a convicted person at the time of the incident and thus those Amendments do not apply.  Even so, Defendants assert that because the standard regarding excessive force under the Fourteenth Amendment is substantially similar to that under the Eighth Amendment, they are entitled to judgment on the merits as well.  Specifically, Defendants claim that the removal of Plaintiff from the premises was reasonably related to the legitimate governmental objective of maintaining security at the prison.

Finally, Defendants argue that Plaintiff's state law claims for assault and battery must fail because all Defendants are protected under the Pennsylvania Political Subdivision Tort Claims Act.  Defendants note that the Act is a "blanket statutory provision of immunity from suit on state law tort claims for 'local agencies'" (Doc. 35 p. 17) and that the prison officials are protected under the act.  Because of this immunity, Defendants assert that judgment should be entered for them as a matter of law on Plaintiff's state tort claims.

### D.  Plaintiff's Arguments in Opposition to the Motion

---

[2]Defendants also maintain that because Plaintiff jumped out of a moving vehicle when he arrived at the prison, it is entirely possible that the abrasions Plaintiff sustained were entirely unrelated to the force used to remove him from the entryway of the prison.

In opposition to the Motion, Plaintiff maintains that there are, at the very least, genuine issues of material fact that would necessitate a trial. First, Plaintiff asserts that there is a genuine dispute as to whether Defendants Miller and Socko were personally involved in the alleged force. Plaintiff notes that Defendant Miller testified that he picked Plaintiff up by the arm, and that Defendant Socko testified that he, Treas, and Smink picked up the Plaintiff as well. Plaintiff also testified that Defendant Socko placed his foot on Plaintiff's shoulder.

Plaintiff further maintains that summary judgment is inappropriate with respect to his Fourth or Eighth Amendment claims. First, Plaintiff asserts that the Fourth Amendment is appropriately applied because, according to Plaintiff, he was not incarcerated at the time the alleged force was used. Plaintiff notes that he was sentenced on December 12, 2006 and arrived to serve his sentence on December 13, 2006. He claims that, because he was not yet placed in the custody of the Defendants, the Fourth Amendment's standards for a "seizure" should apply (via the Fourteenth Amendment). Nonetheless, Plaintiff asserts that the Defendants' alleged use of force amounted to a violation of his constitutional protections from "excessive force" under both the Fourth Amendment and the Eighth Amendment. The only counter-argument Plaintiff makes with respect to his Eighth Amendment excessive force claim is that "even if this Court determines that the Eighth

Amendment standards are to be applied, one need look no further than Defendant Reish' [*sic*] order to have the Plaintiff removed from the facilities followed by the actions of Smink and Socko in dragging Plaintiff down the steps of the sidewalk." (Doc. 39 p. 6). With respect to his Fourth Amendment claim, Plaintiff asserts that, under a totality of the circumstances, the Defendants used excessive force because he was not compromising the security of the prison. In support of that argument, Plaintiff highlights that he "was not yet in the prison but rather, in a vestibule area awaiting admission". (*Id.*).

Finally, Plaintiff asserts that no Defendant is protected by the immunities provided under the Pennsylvania Political Subdivision Tort Claims Act. Plaintiff notes that the Act does not protect defendants who have engaged in "willful misconduct" and that the Third Circuit has interpreted "willful misconduct" as synonymous with an intentional tort. Because assault and battery are intentional torts, Plaintiff maintains that Defendants are not granted immunity with respect to those claims, and thus those claims should be presented to a jury.

## IV.    DISCUSSION

### A.    Personal Involvement of Defendants Miller and Socko

When bringing an action under 42 U.S.C. § 1983 ("§ 1983"), a plaintiff must establish that a defendant deprived plaintiff "of a right secured by the

Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). As the parties recognize, a plaintiff must demonstrate the personal involvement of each individual defendant in an action and that "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).

As noted, Defendants maintain that there is no record evidence to indicate that Defendants Miller and Socko had any personal involvement in the force used to remove Plaintiff from the vestibule area. Plaintiff maintains that those two Defendants testified in depositions that they were, in fact, involved in removing Plaintiff from the vestibule area. Nonetheless, the Court has repeatedly scored the record for evidence that would support Plaintiff's allegations, and have found none beyond Plaintiff's own testimony.[3] We repeat plaintiff "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Because there is no evidence on the

---

[3]In Plaintiff's SOMF, Plaintiff cites to "Exhibit F" as Defendant Miller's deposition transcript; but Exhibit F is nowhere to be found.

record to support Plaintiff's allegations of personal involvement, there is no issue of material fact present and thus we must dismiss Miller and Socko as Defendants.[4]

**B.    Eighth Amendment Excessive Force Claim[5]**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment."  After conviction, the Eighth Amendment is the primary source for protection of an inmate who claims that officials used excessive and unjustified force.  *See Whitley v. Albers*, 475 U.S. 312, 327 (1986); *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).  When a plaintiff asserts an excessive force claim under the Eighth Amendment, "the central question is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Brooks*, 204 F.3d at 106 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).  To survive summary judgment, therefore, the evidence must "support a reliable inference of wantonness in the infliction of pain."  *Whitley*, 475

---

[4]We also alternatively find that Plaintiff's Eighth Amendment claims against all Defendants fail on the merits because the record fails to establish any issue of material fact as to the requisite elements of those claims.

[5]We note that the parties dispute the applicability of the Eighth Amendment as Plaintiff was convicted but not yet physically in the custody of the Northumberland County prison when the events at issue occurred.  Defendants maintain that Plaintiff was incarcerated at the time, and although Plaintiff asserts Eighth Amendment excessive force claims, he nonetheless maintains that the Fourth Amendment applies.  We ultimately find that Plaintiff's claims fail under both the Eighth Amendment and the Fourth Amendment, and thus will detail our analysis under each.

U.S. at 322.[6]  Although there is no minimum threshold regarding the extent of an injury required to establish excessive force[7], the prohibition of cruel and unusual punishment nonetheless "necessarily excludes from constitutional recognition *de minimus* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Hudson*, 503 U.S. at 9-10.

Courts consider many factors in determining whether an official used excessive force in violation of the Eighth Amendment's prohibition of cruel and unusual punishment.  These factors include:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that as used"; (3) "the extent of the injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

*Brooks*, 204 F.3d at 106 (quoting *Whitley*, 475 U.S. at 321).

We find that there is no record evidence upon which a reasonable juror could find a violation of Plaintiff's Eighth Amendment rights.  The undisputed

---

[6]Such an inference of wantonness can be made, for example, when the evidence demonstrates that a guard intends to harm an inmate.  *Brooks*, 204 F.3d at 106 (citing *Sampley v. Ruettgers*, 704 F.2d 491, 495 (10th Cir. 1983)).

[7]"[T]he absence of a significant resulting injury is not a *per se* reason for dismissing a claim based upon alleged wanton and unnecessary use of force against a prisoner."  *Brooks*, 204 F.3d at 109.  The extent of the injury, however, does "provide[] a means of assessing the legitimacy and scope of the force" considering the attendant circumstances.  *Id.*

facts demonstrate an apparent need for the application of force against the Plaintiff. Although Plaintiff disputes that he was a threat to the prison security, it is undisputed that he was sitting in the vestibule area such that persons entering had to step over him, that he did not have commitment papers, and that he refused to exit the premises when asked to do so. Further, there is no evidence on the record to demonstrate that the force used was disproportionate to the need to remove him from the building; the parties do not dispute that Plaintiff was picked up and carried out of the vestibule area, and Plaintiff proffers no evidence or argument to demonstrate any force used beyond that. Because Plaintiff disputes that he jumped out of a moving vehicle beforehand and that he attempted to intentionally harm himself, we will assume that all injuries Plaintiff sustained were sustained when he was carried out of the vestibule. Even so, the undisputed evidence on the record demonstrates that Plaintiff's injuries were *de minimus.* Although we recognize that there is no minimum threshold for the extent of an injury, the absence of any evidence of wantonness on Defendants' part combined with an injury of minor contusions cannot demonstrate a violation of Plaintiff's Eighth Amendment protection from cruel and unusual punishment. Even assuming that the officials did not subjectively perceive a great threat by Plaintiff, it is undisputed that they did not know whether Plaintiff was supposed to be there

or not, and did know that Plaintiff was obstructing access to the prison and refused to leave. Based upon these facts as known by the officials, a reasonable officer in their position as prison guards would reasonably perceive at least some threat posed by Plaintiff. Finally, the record demonstrates that the force used itself was not severe in nature.

As described, there is simply no dispute as to material facts that should be presented to a jury. Although the parties do disagree on certain points, no credibility determinations are necessary because, even when resolving each disputed fact in Plaintiff's favor, there is still no record evidence that can support a "reliable inference of wantonness in the infliction of pain". *Brooks*, 204 F.3d at 106. Therefore, Plaintiff's Eighth Amendment excessive force claim must necessarily fail, and we shall enter judgment for all Defendants on that claim.

C.     **Fourth Amendment and Fourteenth Amendment Excessive Force Claims**

Plaintiff alternatively argues that the Fourth Amendment standard regarding the use of force in a "seizure" is applicable to the matter at hand. Much like the Eighth Amendment, the Fourth Amendment prohibits the use of excessive force, but extends the protection to a detainee or un-sentenced prisoner. *See Graham v. Connor*, 490 U.S. 386, 388, 396 (1989) (Eighth Amendment standard applies after

16

the government has provided the constitutional guarantees associated with criminal prosecutions); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("For under the Due Process Claus, a detainee may not be punished prior to an adjudication of guilt . . ."); *see also Lora-Pena v. F.B.I.*, 529 F.3d 503, 508 (3d Cir. 2008) (same). The Supreme Court set forth the guiding standards under which the courts must analyze whether a detainee has been deprived of due process related to the use of force:

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.

*Bell v. Wolfish*, 441 U.S. 520, 538-29 (1979) (internal citations omitted). The Third Circuit "distilled the Supreme Court's teachings in *Bell* into a two part test. 'We must ask, first, whether any legitimate purposes are served by these

conditions, and second, whether these conditions are rationally related to these purposes.'" *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008) (quoting *Union County Jail Inmates v. Di Buono*, 713 F.2d 984, 992 (3d Cir. 1983)).

Plaintiff offers neither evidence nor argument to support a Fourth Amendment claim beyond baldly asserting that, because excessive force is considered under the totality of the circumstances standard, it must necessarily be a question for the jury to decide. Such claims, however, are properly decided on a motion for summary judgment if there exists no genuine dispute as to any material fact. *See, e.g. Smith v. Addy*, 343 Fed. Appx. 806 (3d Cir. 2009) (not-precedential opinion) (affirming grant of summary judgment on Fourth Amendment claim); *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008) (same).

We find that the record supplies no evidence to demonstrate a genuine dispute as to material facts with respect to Plaintiff's Fourth Amendment claims. We note that the "reasonableness" inquiry is an objective one: we must evaluate whether the force used was reasonable in light of the facts and circumstances confronting the officer, regardless of their underlying intent. *Graham*, 490 U.S. at 397. Here, the record clearly demonstrates that each official acted in an objectively reasonable manner to address Plaintiff's refusal to leave the vestibule area, and because we have repeated the same facts numerous times with regard to

Plaintiff's other claims we will only briefly restate them here. Plaintiff arrived at the prison without paperwork. He smelled of alcohol, yelled, sat on the floor so that persons entering the premises had to step over him, and refused to leave the vestibule area. Plaintiff was picked up by Defendants and carried outside – he was neither punched nor kicked. Based upon the perspective of the Defendants at the time of this incident, we find that there is no question of material fact with respect to the reasonableness of the officials' actions. Put another way, and with the application of a modicum of common sense, we ask the perhaps rhetorical question: What else could Plaintiff have expected based upon his boorish behavior? Therefore, no reasonable jury could find for Plaintiff on his Fourth Amendment claim, and thus Defendants are entitled to judgment on that claim as well.

### D.    Common Law Claims

Because we are dismissing all of Plaintiff's federal claims, we shall not retain jurisdiction over Plaintiff's Pennsylvania law claims for assault and battery. We thus will not decide those claims on their merits and will dismiss them without prejudice.

## V.    CONCLUSION

For the reasons articulated above, we find that there exists no genuine issue

of material fact for trial with respect to Plaintiff's Eighth, Fourth, and Fourteenth Amendment claims. We repeat that the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Because Plaintiff has failed to demonstrate any specific facts that show a genuine issue for trial, we will grant Defendants' Motion for Summary Judgment (Doc. 34), enter judgment for Defendants on all of Plaintiff's federal claims, and dismiss all of Plaintiff's Pennsylvania common-law claims without prejudice. An appropriate Order shall enter.